**AFFIDAVIT OF SPECIAL AGENT JASON DEFREITAS
IN SUPPORT OF A CRIMINAL COMPLAINT**

**INTRODUCTION**

I, Jason DeFreitas, having been first duly sworn, do hereby depose and state as follows:

1. I am a Special Agent with the Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations ("HSI"). I am assigned to the Boston Field Office and have been employed by HSI since 2006. I am currently assigned to the Cyber Group. Prior to my assignment to the Boston Field Office, I was assigned to the HSI Los Angeles Field Office, where I served as a member of the Intellectual Property Rights Group. In connection with my official duties, I have investigated and assisted other agents in investigating cases involving a wide variety of criminal violations including, but not limited to, fraud, intellectual property rights, cultural property theft, and child exploitation. Prior to my employment with HSI, I served as a Customs and Border Protection Officer at the Los Angeles International Airport for approximately four years. My duties included the interception and examination of individuals and merchandise for violations of United States laws.

2. I submit this affidavit in support of a criminal complaint charging Paul WEDDINGTON (YOB 1971), of Boston, Massachusetts, with one count of receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2).

3. The statements contained in this affidavit are based in part on: information provided by HSI agents; written reports and other information about this and other investigations that I have received, directly or indirectly, from other law enforcement agents; information gathered from the service of administrative subpoenas; the results of physical and

electronic surveillance conducted by law enforcement agents; independent investigation and analysis by HSI agents/analysts and computer forensic professionals; and my experience, training, and background as a Special Agent with HSI. Because this affidavit is submitted for the limited purpose of establishing probable cause to secure a criminal complaint, I have not included each and every fact known to me concerning this investigation. Where statements of others are set forth in this affidavit, they are set forth in substance and in part.

## STATEMENT OF PROBABLE CAUSE

4. On February 12, 2021, I obtained a federal warrant authorizing the search of Paul WEDDINGTON's vehicle and current residence in Norcross, Georgia, for evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 2252A. The affidavit submitted in support of that warrant is attached hereto as **Sealed Exhibit A**.

5. On February 17, 2021, at approximately 6:00 a.m., HSI agents from Boston and Atlanta executed the search warrant at WEDDINGTON's residence, a room at the InTown Suites in Norcross, Georgia. WEDDINGTON was present, along with an adult female who was subsequently identified as his wife.[1]

6. WEDDINGTON agreed to speak with agents. He was advised of and signed a written waiver of his *Miranda* rights. The interview, which occurred in a different room at the hotel, was recorded; the statements below are summary in nature unless specifically indicated otherwise.

7. During the course of the interview, WEDDINGTON indicated that he had a past sexual

---

[1] The adult female indicated they were married on or about August 6, 2020.

relationship with Nichole CYR, who he estimated that he had known since around 2017 or 2018. WEDDINGTON indicated that he last communicated with CYR in or around July 2020.

8. WEDDINGTON acknowledged that the phone number referenced in Sealed Exhibit A, (XXX) XXX-2172, belonged to him.[2] WEDDINGTON explained that he had been in a prior relationship with the female who owns the "Mattapan Address" referenced in Sealed Exhibit A and continues to use that address for Massachusetts Registry of Motor Vehicles purposes.

9. WEDDINGTON indicated that they lived in Boston until approximately June or July 2020, when he and his now-wife moved to Georgia for a short time. They returned to Boston briefly, and then moved down to Georgia in August.[3]

10. During the execution of the search, agents located one Samsung Galaxy Note9 in a duffel bag in a closet and a Samsung Galaxy Note10+ on the night stand next to the only bed in the room. The adult female in the room told agents that the Galaxy Note10+ was WEDDINGTON's current phone and that it was on her phone plan. The adult female identified the Galaxy Note9 as WEDDINGTON's prior phone.[4]

---

[2] When agents asked his phone number, he gave the other phone number referenced in Sealed Exhibit A, (XXX) XXX-5965. Agents asked if he had another phone number; he initially indicated that he did not know or remember. Agents read the 2172 number to him, and he nodded and shrugged.

[3] The adult female interviewed on scene indicated that they left Boston in June, returning briefly sometime in July and again in August when they got married. She confirmed that, prior to leaving in June, they had both been in Massachusetts continuously.

[4] When agents asked WEDDINGTON where his old phone was, he indicated that he may have turned the old phone in for a new one when the adult female got him an upgrade. WEDDINGTON and the adult female were interviewed in separate rooms. Agents

3

11. Agents were able to conduct preliminary examination of the Galaxy Note9 at a location off-site. Agents noted the following files: [5]

   a. At file path: /data/data/com.sec.android.gallery3d/cache/11/2394593003057252289.0: an image depicting an infant lying back, with her legs up, vagina exposed, and a diaper visible near her bottom. The infant's vagina appears to be the focal point of the image.[6] The image appears to be a screenshot of a video call between two users; it shows the picture of the child in the larger, main frame and shows a balding adult male wearing a Covid mask in a smaller frame.[7] While the adult male is wearing a protective mask, he appears to be WEDDINGTON, based on a scar visible on an unmasked portion of

---

interviewing WEDDINGTON were not aware of the discovery of the Galaxy Note9 in the closet at the time WEDDINGTON made this statement.

[5] To avoid unnecessary in-person interaction given the health concerns posed by the current pandemic, I am not providing a copy of this image to the Court. I am aware that the "preferred practice" in the First Circuit is that a magistrate judge view images that agents believe constitute child pornography by virtue of their lascivious exhibition of a child's genitals. *United States v. Brunette*, 256 F.3d 14, 18-19 (1st Cir. 2001). Here, however, the description offered "convey[s] to the magistrate more than [my] mere opinion that the imag[e] constitute[s] child pornography." *United States v. Burdulis*, 753 F. 3d 255, 261 (1st Cir. 2014) (distinguishing Brunette). The child believed to be Minor A is an infant, and is being sexually abused in the second image; the child believed to Minor B is apparently around 7 years old – clearly younger than 18. The description of the files here is sufficiently specific as to the age and appearance of the alleged children that the Court need not view the file to find that it depicts child pornography. *See United States v. Syphers*, 426 F.3d 461, 467 (1st Cir. 2005) ("The best practice is for an applicant seeking a warrant based on images of alleged child pornography is for an applicant to append the images *or provide a sufficiently specific description of the images* to enable the magistrate judge to determine independently whether they probably depict real children.") (emphasis added).

[6] The infant's face is visible. She appears, to investigators, to be the child referenced as Minor A in the Sealed Exhibit A, but her identity has not been confirmed.

[7] Agents are unable to determine which video calling platform is depicted based solely on the markings visible on the screen, but agents note that the interface appears similar to the interface of Google Duo, which is a multiplatform video communication application installed on WEDDINGTON'S phone.

4

his face. Based on my experience with video calls, it appears to me that the adult male is the participant whose phone is being used to take a screenshot of the conversation/video call, and that the user on the other end of the call has his/her view flipped so that the rear camera on the phone (rather than the front-facing camera typically used for "selfies") is displaying content. The time visible in the upper left-hand corner of the screenshot (i.e., the screen of the phone which was receiving the video content depicting the child) reads 2:07. The date of the video call is not visible in the screenshot; however, preliminary forensic analysis of the phone indicates that the accessed and modified dates of the image are both May 12, 2020 at 7:04:25 PM UTC+0.[8] At this time, agents are not able to say with certainty how the apparent screenshot came to exist in the gallery cache folder, but are able to say that it appeared there no later than May 12, 2020.[9] Forensic analysis is ongoing.

b. At file path:/data/data/com.sec.android.gallery3d/cache/13/-3414211752837923649.0: an image that appears to be another screenshot of a video call. This image shows a light skinned adult hand spreading open the genitals of a female infant who appears to be the same size as the child depicted in the first picture. The child's face is not visible in this image, but the bottom of the child's shirt is visible, and it appears to be the same color as portions of the child's shirt that are visible in the first picture. As with the first picture, there is a smaller frame visible within the screenshot that shows the same adult

---

[8] The created date is January 1, 1970; this, obviously, is not accurate. Without further research, agents cannot at this time explain why that date is indicated.

[9] Generally, the existence of an image in a cache folder indicates that the image was at one time present in another space on the phone, such as the camera roll.

male, wearing a protective mask, which leads me to believe that the individual pictured in the inset frame was the individual using the phone that took the screenshot of this video. The time visible on the phone interface in the screenshot is 2:08. Forensic analysis of the phone indicates that the created, accessed, and modified dates are the same as for the image described in paragraph 11(a). At this time, agents are not able to say with certainty how the apparent screenshot came to exist in the gallery cache folder, but are able to say that it appeared there no later than May 12, 2020. Forensic analysis is ongoing.

c. At file path:/data/data/com.sec.android.gallery3d/cache/14/-3114688220913976483.0: an image that appears to one of the images described in Sealed Exhibit A, Paragraph 15(f), namely: a photograph sent by CYR to WEDDINGTON on May 4, 2020, showing the prepubescent vagina of a child estimated to be approximately six to seven years old lying in a bathtub – which, as noted in Sealed Exhibit A, investigators believe to be the Minor B referenced in that affidavit. The created date is the same as the other images referenced herein; the accessed and modified dates are May 4, 2020 at 10:06:40 PM UTC+0.

(this part intentionally left blank)

## CONCLUSION

12. Based on all of the foregoing, I submit that there is probable cause to believe that on dates between on or about March 3, 2020 and May 12, 2020, Paul WEDDINGTON knowingly received, and attempted to receive, any child pornography, as defined in Title 18, United States Code, Section 2256(8), that had been mailed, and using any means and facility of interstate and foreign commerce shipped and transported in and affecting interstate and foreign commerce by any means, including by computer, in violation of 18 U.S.C. § 2252A(a)(2)(A).

Sworn to under the pains and penalties of perjury,

/s/ Jason DeFreitas
_____
Special Agent Jason DeFreitas
Homeland Security Investigations

SWORN before me telephonically pursuant to Fed. R. Crim. P. 4.1 this 17th day of February, 2021.

_Page Kelley_
_____
HONORABLE M. PAGE KELLEY
CHIEF UNITED STATES MAGISTRATE JUDGE